Frank B. JAMES, et al., Plaintiffs, Appellants,

v.

Francis X. BELLOTTI, et al., Defendants, Appellees.

No. 83–1878.

United States Court of Appeals, First Circuit.

Argued April 6, 1984.

Decided May 10, 1984.

William A. Hahn, Boston, Mass., with whom Robert C. Hahn, and Hahn & Matkov, Boston, Mass., were on brief, for appellants.

Paul R. Matthews, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Thomas R. Kiley, Asst. Atty. Gen., Robert J. Muldoon, Jr., and Sherin & Lodgen, Boston, Mass., were on brief, for appellees.

Before BOWNES, ALDRICH and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This is the fourth action in which appellants have appealed adverse determinations from the United States District Court for the District of Massachusetts in connection with the Gay Head Indian land claims. The underlying litigation began in 1974, when the Wampanoag Tribal Council of Gay Head, Inc. (Tribal Council) filed suit against the Town of Gay Head and its selectmen, asserting land claims of the Gay Head Indians on federal constitutional and statutory grounds. The Gay Head Tribe was joined as a party plaintiff, and the Attorney General of Massachusetts and the Gay Head Taxpayers' Association intervened as parties defendant. *Wampanoag Tribal Council of Gay Head, Inc. v. Town of Gay Head,* No. 74–5826 (D.Mass.) [*Wampanoag Tribal Council*]. Appellants in the present action, Frank James and Thelma Weissberg, are individual members or descendants of the Gay Head Tribe who, with forty-one others, sought to intervene in *Wampanoag Tribal Council* in 1981 on the ground that the Tribal Council did not adequately represent their interests. Later, however, they apparently withdrew their motion to intervene.

In the second case, James and Weissberg, along with some one hundred other Gay Head Indians, also sued in the district court, claiming title to the same land involved in *Wampanoag Tribal Council* on virtually identical federal grounds. The district court granted summary judgment against them, and denied their post-judgment motion to amend their complaint to join the Gay Head Tribe as a party plaintiff. This court affirmed the district court's judgment on appeal, holding that individual Indians lacked standing to sue under the federal statute, 25 U.S.C. § 177, that the challenged Massachusetts statutes authorizing alienation of Indian lands were not preempted by the Indian Commerce Clause, U.S.Const. art. I, § 8, cl. 3, and that the motion to amend the complaint was properly denied. *James v. Watt,* 716 F.2d 71 (1st Cir.), *petition for cert. filed,* —— U.S. ——, 104 S.Ct. 546, 78 L.Ed.2d 721 (1983).

While *James v. Watt* was pending, James, Weissberg, and the other forty-one would-be intervenors in *Wampanoag Tribal Council* renewed their motion to intervene, contesting the Tribal Council's authority to represent the Gay Head Tribe and alleging their own standing as individuals to assert tribal claims. Their motion was denied, and they appealed. However, one week after this court's decision in *James v. Watt* and just prior to scheduled oral argument, appellants withdrew their appeal. *Wampanoag Tribal Council, appeal withdrawn,* No. 83–1163, (1st Cir. Sept. 1, 1983).

Meanwhile, in September, 1983, the parties in *Wampanoag Tribal Council* reached a framework settlement agreement providing that the disputed individual and tribal land claims were to be extinguished by special federal legislation and the case dismissed with prejudice. The agreement was drawn up in the form of a "Joint Memorandum of Understanding" (Joint Memo). James and Weissberg op-

posed the proposed settlement and challenged the validity of the Joint Memo by bringing suit against the Attorney General of Massachusetts, the Tribal Council, the Town of Gay Head, and the Gay Head Taxpayers' Association—four of the five parties to the *Wampanoag Tribal Council* litigation—in the Probate Court for Suffolk County, Massachusetts. In addition to an injunction against the signing of the Joint Memo, James and Weissberg requested a declaration that the Tribal Council's "asserted authority to speak for all members-descendants of the Gay Head Tribe" was "illegal and void" and that its intended signing of the Joint Memo "to settle all the Gay Head Tribe's tribal and individual members-descendants [sic] federal land and associated claims" exceeded the terms of its state charter. The Massachusetts court issued a temporary restraining order to prevent the signing of the Joint Memo. The defendants removed the case to federal district court, where the order was dissolved for the following reasons:

> (1) the plaintiffs should not be permitted to challenge the authority of the corporation by taking in essence the first step along the identical road which they sought to travel in *James v. Watt* and in their effort to intervene in the principal action; (2) there is no likelihood of success on the merits, in the face of the enunciation of principles in the opinion of the Circuit Court of Appeals, and plaintiffs' lack of standing as individuals; (3) and that the harm to defendants is obvious—delay in disposing of this lengthy litigation.

*James v. Bellotti*, No. 83–3494 (D.Mass. Nov. 14, 1983) [*James v. Bellotti I*]. James and Weissberg appealed, No. 83–1846 (1st Cir. Nov. 16, 1983). After the Joint Memo was signed on November 19 and 22, 1983, however, they withdrew their appeal (1st Cir. Nov. 22, 1983), and obtained a voluntary dismissal from the district court.

Shortly after commencing the *James v. Bellotti I* action, James and Weissberg filed the complaint in the present case, which we shall call *James v. Bellotti II*, in the Superior Court for Suffolk County. The parties are identical to those in *James v. Bellotti I*, and the requested relief, *viz.* an injunction against the signing of the Joint Memo, is the same. The causes of action in *James v. Bellotti II*, however, are framed entirely with reference to state law: it is alleged that in purporting to represent all Gay Head Indians in the Joint Memo the Tribal Council has misappropriated appellants' names, invaded their statutory privacy interests, and acted fraudulently. The case was removed to the district court, which denied appellants' motion to remand as well as their request for injunctive relief "[f]or precisely the same reasons" set out in *James v. Bellotti I*.

The denial of an injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1), and the refusal to remand to the state court, though not directly appealable by itself, is reviewable in conjunction with the interlocutory appeal. *See* 1A Moore's Federal Practice ¶ 0.169[2.–3] at 706–07. In this case, the jurisdictional issue is dispositive. Removal from a state court is proper only if the district court has original jurisdiction, 28 U.S.C. § 1441(a), and the only possible ground for removal here is that the case arose under federal law, *see* 28 U.S.C. § 1331. The existence of a federal question must be determined from the allegations in the complaint, without reference to other documents such as the petition for removal or the answer. *Charles D. Bonanno Linen Service, Inc. v. McCarthy*, 708 F.2d 1, 3 (1st Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983). The elements of a federal claim need not be explicitly and comprehensively recited, and there is nothing to prevent a court from "engag[ing] in a little statutory logic" to deduce elements implicit on the face of the complaint, *id.* at 4, but the federal claim must nevertheless be substantial and identifiable. Against the background of protracted and repetitive litigation, it seems likely that appellants have brought this action as part of a larger strategy involving the land claims, and this we will con-

sider in a moment. However, the complaint at least purports to raise three claims under state law—misappropriation of name, invasion of privacy, and fraud—which, conceivably, are independent of the federal claims. The state claims may well lack merit as a matter of state law, but that is another question. We see no adequate basis for federal jurisdiction, and conclude that this action was improvidently removed. At the same time, some further observations are in order:

 Although our holding requires that this case be remanded to the state court, we do not mean to suggest that appellants may pursue further litigation without heed to the effects on the district court's jurisdiction in the connected Indian land claim cases. The district court has acquired continuing in rem jurisdiction of the disputed land claims in *Wampanoag Tribal Council,* and no state court, whether purporting to exercise concurrent jurisdiction in rem, *see Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935); *Kline v. Burke Construction Co.,* 260 U.S. 226, 235, 43 S.Ct. 79, 83, 67 L.Ed. 226 (1922), or in personam, *see Donovan v. City of Dallas,* 377 U.S. 408, 412–13, 84 S.Ct. 1579, 1582–83, 12 L.Ed.2d 409 (1964), may deprive the district court of its exclusive power to adjudicate those land claims. *See* 1A Moore's Federal Practice ¶ 0.214 at 23644–66. This is merely one aspect of the more general rule that federal and state courts do not interfere with or attempt to restrain each other's proceedings. *Donovan,* 377 U.S. at 412, 84 S.Ct. at 1582. It appears, however, that this is precisely what appellants are attempting to accomplish by seeking a state court injunction against the proposed settlement embodied in the Joint Memo. This they may not do and, if the state court were to seek to enjoin the district court proceedings, or a court-approved settlement thereof, the district court could properly enjoin the state court action.

 The federal Anti-Injunction Act, 28 U.S.C. § 2283, prohibits a federal court from granting an injunction to stay state court proceedings "except ... where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Thus, the district court may enjoin appellants from bringing additional suits if one of the statutory exceptions applies and the normal prerequisites for injunctive relief are met. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 286–87, 90 S.Ct. 1739, 1742–43, 26 L.Ed.2d 234 (1970). There is no requirement that an independent jurisdictional basis be shown; the district court's jurisdiction to issue an injunction under the exceptions in section 2283 is ancillary to its jurisdiction in the underlying case. *Dugas v. American Surety Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720 (1937); *Southwest Airlines Co. v. Texas International Airlines, Inc.,* 546 F.2d 84, 90 (5th Cir.1977), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

 The "necessary in aid of" language in the Anti-Injunction Act has been read as incorporating a historical exception for cases in which a federal court obtains in rem jurisdiction prior to a state-court suit. *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 641, 97 S.Ct. 2881, 2892, 53 L.Ed.2d 1009 (1977) (plurality opinion). It is not necessarily limited to in rem actions, however, and is meant "to give sufficient flexibility that a federal court, as a court of equity, may, when it has jurisdiction, deal adequately with the situation at hand." 1A Moore's Federal Practice ¶ 0.208a[2] at 2336 (citation omitted). The exception implies that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line,* 398 U.S. at 295, 90 S.Ct. at 1747; *see also United States v. District of Columbia,* 654 F.2d 802, 809 n. 16 (D.C.), *cert. denied sub nom. Prince George's County v. United States,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981).

 The words "protect or effectuate" in section 2283 are generally viewed as

incorporating the principles of res judicata and collateral estoppel, which come into play only when there is a final judgment or appealable order to be protected or effectuated. *International Association of Machinists & Aerospace Workers v. Nix,* 512 F.2d 125, 130 (5th Cir.1975). *But see Three J Farms, Inc. v. Plaintiffs' Steering Committee,* 659 F.2d 1332, 1335 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982) (judgment approving settlement "predictable if not assured," may support protective injunction though not entered until after injunction); *see also Commerce Oil Refining Corp. v. Miner,* 303 F.2d 125, 128 (1st Cir.1962). The proposed settlement of the land claims in *Wampanoag Tribal Council* is still pending, apparently waiting for congressional and state approval. Nothing prevents the district court from issuing an order provisionally approving the settlement, which would support a subsequent protective injunction.

It also seems that appellants might be estopped, by their failure to appeal from the denial of their motion to intervene in *Wampanoag Tribal Council,* from now claiming that they are necessary parties or that their interests were not adequately represented in that case. *See Cheyenne River Sioux Tribe of Indians v. United States,* 338 F.2d 906, 911 (8th Cir.1964), *cert. denied,* 382 U.S. 815, 86 S.Ct. 34, 15 L.Ed.2d 62 (1965). In *James v. Watt,* this court expressly observed that "the issue at stake—whether plaintiffs here have a right to upset the settlement entered into by the tribe and its other members—is more appropriately before us in [*Wampanoag Tribal Council*], scheduled to be heard this September." 716 F.2d at 77. By withdrawing their appeal a week after our decision in *James v. Watt,* and by failing to pursue their appeal in *James v. Bellotti I,* appellants may well have foreclosed their opportunity to contest the settlement in *Wampanoag Tribal Council,* with respect not only to the federal claims actually asserted but also to the pendent state claims that could have been raised. *See Harper*

*Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 945–46 (7th Cir.1981).

We conclude that the district court has adequate means to prevent interference with its disposition of the *Wampanoag Tribal Council* case, regardless of the eventual outcome in *James v. Bellotti II.* Because the present case was improvidently removed, we remand to the district court with instructions to remand the case to the state court under 28 U.S.C. § 1447(c).

*Reversed and remanded.*