**STANDARD MICROSYSTEMS CORPORATION, Plaintiff–Appellee,**

v.

**TEXAS INSTRUMENTS INCORPORATED, Defendant–Appellant.**

**No. 1441, Docket 90–7260.**

United States Court of Appeals, Second Circuit.

Argued May 14, 1990.

Decided Oct. 10, 1990.

Mari M.G. Shaw, Philadelphia, Pa. (Nancy J. Bregstein, Tamara J. Kessler, Martin J. Black, Dechert Price & Rhoads, Philadelphia, Pa., Melvin A. Schwarz, Dechert Price & Rhoads, New York City, on the brief), for plaintiff-appellee.

Barry R. Satine, New York City (Hal D. Cooper, Robert C. Kahrl, David Lavey,

Jones, Day, Reavis & Pogue, New York City, on the brief), for defendant-appellant.

Before OAKES and PRATT, Circuit Judges and LEVAL, District Judge.*

LEVAL, District Judge:

This appeal seeks to enforce the Anti–Injunction Act, 28 U.S.C. § 2283. In a patent-licensing dispute, the district judge enjoined the defendant-appellant from prosecuting a suit which it had instituted against plaintiff-appellee in the Texas state courts. Because we hold that this order violated the terms of the Act, the injunction is vacated.

The dispute arises out of a patent cross-licensing agreement between Standard Microsystems Corp. ("SMC"), the plaintiff-appellee, and Texas Instruments, Inc., ("TI"), the defendant-appellant, dated October 1, 1976 (the "Agreement"). The Agreement grants to each party the right to make royalty-free use of semiconductor technology owned by the other. It apparently also contains provisions requiring the parties to keep the agreement confidential, and prohibiting the assignment of rights under the Agreement.

TI has licensed certain Japanese and Korean companies to exploit TI's "Kilby patents," which are part of the cross-licensed technology. SMC now proposes to transfer its rights under the Agreement to make royalty-free use of the same TI technology. It proposes to offer these rights to Japanese and Korean entities. TI apparently advised SMC that it would consider such a sale, and disclosure by SMC in preparation for such a sale, as a violation of the Agreement.

On Friday, January 19, 1990, SMC filed this action against TI in the Eastern District of New York. The complaint alleges violations of federal antitrust and securities statutes and breach of contract, and further seeks declaratory relief that SMC's actions do not breach its Agreement.

Simultaneously with the filing of the suit, SMC obtained a temporary restraining order signed by Judge Joseph McLaughlin. The order restrained TI

> from terminating its License Agreement dated October 1, 1976, with plaintiff or revoking any of plaintiff's rights under that Agreement.

Judge McLaughlin's order included an Order to Show Cause setting a hearing before Judge Leonard Wexler, the assigned judge, on SMC's application for a preliminary injunction to be held on Monday, January 22, 1990.

At 8:00 a.m. on Monday morning, January 22, TI filed suit in the Texas state court against SMC. The suit seeks to bar SMC from making disclosures in violation of the Agreement and to bar SMC from interfering with TI's license negotiations in Japan.

On January 22, Judge Wexler continued the TRO and adjourned the preliminary injunction hearing to Friday, January 26.

On January 26, counsel for SMC advised Judge Wexler that SMC "would like [the court] to enjoin TI along the same lines as the temporary restraining order, to begin with. We would also like, Your honor, ... to enjoin TI from specifically proceeding in the [Texas] State Court action or any other action with respect to the same contract issues...."

Judge Wexler proceeded to make the following order:

> Until there is a determination, Mr. Cooper [TI's counsel], I'm directing you, your firm, your client, anyone connected with you are stayed from doing anything in Texas or in relationship to that action that has previously been filed. Cease and desist immediately.

That is the order from which TI appeals.[1]

### Discussion

■ TI contends that Judge Wexler's order violates the Anti–Injunction Act, 28 U.S.C. § 2283. The Act provides:

---

* Pierre N. Leval, United States District Judge, sitting by designation.

1. In a written order issued on March 1, 1990, Judge Wexler summarized his earlier order as follows:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Its purpose is, *inter alia,* to avoid intergovernmental friction that may result from a federal injunction staying state court proceedings. The Supreme Court has construed the Act to forbid a federal court from enjoining a party from prosecuting a state court action unless one of the three exceptions stated in the statute obtains. The three excepted circumstances are (i) the express provisions of another act of Congress authorizing such an order; (ii) necessity in aid of the federal court's jurisdiction and (iii) the need to protect or effectuate the federal court's judgments. *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287–88, 90 S.Ct. 1739, 1743–44, 26 L.Ed.2d 234 (1970).

None of the three statutory exceptions is here pertinent. There is no contrary act of Congress. And the injunction is not necessary either in aid of the federal court's jurisdiction or to protect or effectuate its judgments.

A number of circumstances may justify a finding that the exceptions govern. Where the federal court's jurisdiction is *in rem* and the state court action may effectively deprive the federal court of the opportunity to adjudicate as to the *res,* the exception for necessity "in aid of jurisdiction" may be appropriate. *Compare Kline v. Burke Construction Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922) (declining to uphold federal court injunction against state court proceedings where contract obligations were in dispute, rather than rights relating to a *res* ); *Heyman v. Kline,* 456 F.2d 123 (2d Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972) (Act bars federal court injunction issued in *in personam* proceeding involving employment contract); *Vernitron*

*Corp. v. Benjamin,* 440 F.2d 105 (2d Cir.), *cert. denied,* 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971) (reversing issuance of injunction justified only by the possibility of collateral estoppel in parallel securities litigations); *with Penn General Casualty Co. v. Pennsylvania ex rel. Schnader,* 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935) (affirming injunction against state court proceedings to protect court's ability to control and dispose of property in liquidation proceeding). Analogous circumstances may be found where a federal court is on the verge of settling a complex matter, and state court proceedings may undermine its ability to achieve that objective, *see In re Baldwin–United Corp.,* 770 F.2d 328, 337 (2d Cir.1985) (upholding injunction against state court actions to protect ability of federal court to manage and to settle multidistrict class action proceeding which was far advanced and in which court had extensive involvement). Or, where a federal court has made conclusive rulings and their effect may be undermined by threatened relitigation in state courts, the exception may be appropriate. *See, e.g., Necchi Sewing Machine Sales Corp. v. Carl,* 260 F.Supp. 665, 669 (S.D.N.Y. 1966) (enjoining state court from hearing claims when federal court had found those claims to be properly heard only before an arbitrator).

The suits at issue here are *in personam* actions, brought on successive business days in two different courts, disputing the interpretation of a contract. The existence of the state court action does not in any way impair the jurisdiction of the federal court or its ability to render justice. It is well-settled that such circumstances as these do not justify invocation of the exceptions of the Anti–Injunction Act. *See Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 642, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977) (reversing injunction of state court proceedings which, like federal court action, involved dispute arising out of cove-

Further, as indicated on the record on January 26, 1990, this Court directed Texas Instruments, its agents and its attorneys, from taking any steps in relation to an action which it instituted on the same issue in Texas state court on the morning of January 22, 1990, shortly before or during the hearing then proceeding in this court.

nant not to compete; "[w]e have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court"); *Kline v. Burke Construction Co.,* 260 U.S. at 230, 43 S.Ct. at 81; *Vernitron Corp. v. Benjamin,* 440 F.2d at 108; *Heyman v. Kline,* 456 F.2d at 131–32.

> Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of *res adjudicata....*

*Vendo Co.,* 433 U.S. at 642, 97 S.Ct. at 2893 (*quoting Kline v. Burke Construction Co.,* 260 U.S. at 230, 43 S.Ct. at 81); *see also Atlantic Line Coast R.R.,* 398 U.S. at 295, 90 S.Ct. at 1747 ("the state and federal courts had concurrent jurisdiction in this [labor dispute] and neither court was free to prevent either party from simultaneously pursuing claims in both courts").

■ SMC argues that, nonetheless, Judge Wexler's injunction must be affirmed because it falls within two additional judicially created exceptions to the Act. First, the Act has been held inapplicable to federal injunctions issued prior to the institution of the state court action. *Dombrowski v. Pfister,* 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965); *In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir.1985). This exception is based both on policy and the explicit terms of the act. Where no state court proceeding exists, there is less danger that a federal court injunction barring the institution of such a proceeding will cause affront to state authority. Furthermore, the Act bars grant of "an injunction to stay *proceedings* in a State court," 28 U.S.C. § 2283 (emph. added), which seems to refer literally to existing proceedings, rather than contemplated proceedings.

SMC contends this case falls within the *Dombrowski* exception because Judge McLaughlin's TRO predated the institution of the Texas action. The contention is frivolous. Although it is true that the TRO predated the Texas action, the TRO did not forbid TI from starting a separate action. The TRO restrained TI only "from terminating [SMC's] License Agreement ... or revoking ... [SMC's] rights under that Agreement." There is no factual basis for SMC's argument that TI's Texas court action was instituted in violation of a federal injunction barring such suit. No order was issued against TI's maintenance of its state court action until January 26, four days after TI started the action.

■ Second, SMC contends that, notwithstanding the Act, a state court action may be enjoined if a motion to bar the state court action was made before the state court action was started. This argument depends on an exception to the Act created by judicial decision in the Seventh Circuit, *Barancik v. Investors Funding Corp.,* 489 F.2d 933 (7th Cir.1973), and followed in the First and Eighth Circuits, *see National City Lines, Inc., v. LLC Corp.,* 687 F.2d 1122, 1127–28 (8th Cir.1982) (following *Barancik*); *Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837 (1st Cir.1988), but rejected in the Sixth, *see Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir. 1978) (criticizing reasoning of *Barancik*), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). This circuit has never considered the issue.

In *Barancik,* defendants filed an action in state court while plaintiff's preliminary injunction motion was pending in federal court seeking to bar defendants from commencing a separate legal action. The federal district judge enjoined prosecution of the state court action. The Seventh Circuit affirmed, noting that if the federal judge had immediately decided the motion, the injunction would have preceded the filing of the state court action and therefore, under *Dombrowski,* would not have violated the Anti–Injunction Act. The court found anomalous the possibility that the federal court's authority to rule on a pending motion could be terminated by the action of one of the litigants and concluded that the Anti–Injunction Act did not prohibit a stay of state court proceedings if the state court proceeding was commenced *after* filing of a motion seeking to enjoin it.

We have considerable doubt whether the *Barancik* rule should be adopted in this circuit. We do not find its reasoning compelling. The *Barancik* court found it "unseemly" that a court's power to rule could be defeated by the quicker action of a litigant. 489 F.2d at 937. But it is axiomatic that one is not disabled from acting merely because an adverse litigant has *applied* for an order to bar such action. A party that has not been enjoined is ordinarily free to act, notwithstanding the pendency of applications to enjoin the action. In many circumstances litigants may lawfully moot an application by acting before the court has ruled. To enjoin conduct requires a judge's order, not merely an application for a judge's order. Where speed is needed, the rules of procedure provide for temporary restraining orders, even without notice, to prevent irreparable harm. *See* Fed.R.Civ.Pro. Rule 65. However anomalous it may seem that a party can moot an issue by acting more rapidly than the court, it is far more anomalous and dangerous that a mere application for injunctive relief be deemed equivalent to a court's order issuing an injunction.

The *Barancik* rule, furthermore, creates a still more serious anomaly. Under *Barancik*, merely by filing an application for relief, a party nullifies an Act of Congress. In passing the Anti–Injunction Act, Congress meant to avoid friction in the relationship between federal courts and state courts. The *Barancik* rule places the power in the hands of the plaintiff unilaterally to nullify the effectiveness of an Act of Congress and to create exactly the kind of federal-state conflict that Congress sought to prevent. *Compare Hicks v. Miranda,* 422 U.S. 332, 348–50, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975).

We need not decide whether the *Barancik* rule will be followed in this circuit because, in any event, it does not apply to these facts.

At the time of TI's commencement of the Texas action, there was no application before the federal court to bar it from doing so. The Order to Show Cause sought a preliminary injunction barring TI from

a. coercing SMC's compliance in TI's interpretation of the License Agreement;

b. interfering with SMC's dealings ...;

c. attempting to monopolize ... through the coercive acts alleged herein; and

d. terminating the License Agreement and ... revoking any of SMC's rights thereunder ..."

SMC's counsel reaches beyond the limits of ingenuity to contrive an argument that the Order to Show Cause applied for an injunction to bar the filing of a parallel action. The argument is to the effect that the application to enjoin TI's "attempt[s] to monopolize ... through the coercive acts alleged herein," especially when combined with the concluding prayer for such "other and different relief as [the court] deems proper and just," incorporates by reference the allegation in the complaint of threats of "sham litigation." Taking all this together, SMC contends its application should be construed as having sought an injunction barring institution of the "sham" Texas action. The argument is more convoluted than convincing. In fact, there was no application before the court to bar TI from starting a lawsuit. Thus, even if we were to adopt the reasoning of *Barancik*, it would not apply to this case.

The district court's order enjoining TI from further prosecuting its action in the Texas state court was issued in violation of the Anti–Injunction Act. Accordingly the order is vacated.